UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROYTHEL WATSON,

    Plaintiff,

v.                                    Case No.: 8:16-cv-1940-T-33TBM

HILLSBOROUGH COUNTY,

    Defendant.
_____/

## ORDER

This matter comes before the Court pursuant to Defendant Hillsborough County's Motion to Dismiss, filed on August 1, 2016. (Doc. # 10). Plaintiff Roythel Watson filed a response in opposition to the Motion on August 18, 2016. (Doc. # 16). For the reasons that follow, the Motion is denied.

**I.   Background**

Roythel Watson is an African-American man employed by Hillsborough County as an Engineering Specialist II in the Public Works Department. (Doc. # 1 at ¶¶ 12, 14). Since he began working for the County in April of 2004, Watson had not been disciplined formally until 2013, when his supervisor, Thomas Capell, became Construction Group Manager. (Id. at ¶ 13).

1

After Capell's promotion, Watson complained to his immediate supervisors that Capell treated African American employees, like Watson, less favorably than Caucasian employees. (Id. at ¶¶ 14, 16). Specifically, Watson first complained to Capell after Capell overlooked him for certain, more favorable assignments, including bridge inspections. (Id. at ¶ 15). Despite Watson's certification to perform such assignments, Capell told Watson that he was under-qualified for those duties. (Id.).

Feeling that his concerns were not adequately addressed by his direct supervisors or Capell, Watson contacted Capell's supervisor, Mike Williams, via email to request a meeting. (Id. at ¶ 17). After Williams did not respond, Watson emailed Williams a second time. Williams then informed Watson that he had scheduled a meeting for Williams, Capell, and Watson after receiving the first email. (Id.). Williams had told Capell to notify Watson about the meeting, but Capell never did. (Id.). Having learned of the meeting, Watson was able to attend. (Id.). During that meeting, Watson asked Capell if Capell is a racist – a question to which Capell did not respond. (Id. at ¶ 18).

In the week after the meeting, Watson was assigned to a bridge project, for which Capell was his direct supervisor.

2

(Id. at ¶ 19). The alleged discrimination and disparate treatment of Watson worsened. (Id.). After Watson again complained of the disparate treatment, Capell continued discriminating against Watson and concocted a plan with another of Watson's supervisors, Christopher Frock, to have Watson fired. (Id. at ¶ 22). According to Watson, this plan involved the filing of two false citizen complaints, which stated that the citizens had observed Watson "driving too fast and recklessly," within a two day period. (Id. at ¶¶ 23, 24).

Although citizen complaints "rarely, if ever," result in formal investigations of the reported employees, the two complaints against Watson were investigated. (Id. at ¶ 23). According to Watson, similar or worse complaints against Caucasian employees resulted in informal counseling without referral of the complaints to Human Resources for investigation. (Id.). Watson alleges that "he was set up because of his race, in Capell's attempt to have him terminated." (Id.). Furthermore, during the investigation of the "trumped up false charges," Capell and Frock also "slander[ed] his name and accus[ed] him of the felonious crime of secretly recording a meeting," after Watson asked to record a meeting with them. (Id. at ¶ 24). As a result of the

discrimination and retaliation against him, Watson states that he has "suffered economical damages, irreparable injury to his reputation, and extreme emotional and physical distress." (Id. at ¶ 29).

In addition to the citizen complaints and alleged slander, Watson alleges that Capell engaged in various other discriminatory conduct. Capell treated African-American subcontractors less favorably than Caucasian subcontractors, by giving an African-American subcontractor a maximum of twenty hours a week of work, while two Caucasian subcontractors worked more hours. (Id. at ¶ 25). Another African-American employee, Fred Thomas, was not promoted to the position of Engineer II despite his thirty years' experience working for the County; instead a Caucasian employee was promoted ahead four positions to fill the job. (Id. at ¶ 27). Until a month before Watson initiated this action, Watson was not permitted to work overtime, unlike his Caucasian coworkers. (Id. at ¶ 28). According to Watson, Capell used racially offensive language, including an instance where Capell said "that would be like having [three] Mexicans walking in circles" during a meeting discussing contractor billing. (Id. at ¶ 26).

On February 7, 2016, Watson submitted a charge of discrimination and retaliation against the County with the Equal Employment Opportunity Commission (EEOC), which was dual filed with the Florida Commission on Human Relations (FCHR). (Id. at ¶ 9). Later, "[s]aid Complaint was officially filed with the EEOC on December 9, 2014" (Id.). On April 26, 2016, the EEOC issued Watson a right to sue letter. (Id. at ¶ 11).

Watson initiated this action in this Court on June 5, 2016, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.01 et seq. (Id. at ¶ 1). On August 1, 2016, the County filed its Motion to Dismiss, arguing that Watson failed to exhaust his administrative remedies. (Doc. # 10). Watson filed a response in opposition to the Motion on August 18, 2016. (Doc. # 16).

## II. Legal Standard

### A. Rule 12(b)(1)

Motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rules Civil Procedure 12(b)(1) may attack jurisdiction facially or factually. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003). When the jurisdictional attack is factual, as in the

5

present case, the Court may look outside the four corners of the complaint to determine if jurisdiction exists. Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 732 (11th Cir. 1982). In a factual attack, the presumption of truthfulness afforded to a plaintiff under Rule 12(b)(6) does not attach. Scarfo v. Ginsberg, 175 F.3d 957, 960 (11th Cir. 1999)(citing Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)). Because the very power of the Court to hear the case is at issue in a Rule 12(b)(1) motion, the Court is free to consider evidence outside the complaint. Eaton, 692 F.2d at 732.

**B. Rule 12(b)(6)**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990)(stating "[o]n a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true"). However:

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Furthermore, "[t]he scope of review must be limited to the four corners of the complaint." St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002).

### III. Analysis

#### A. Incorporation by Reference

As an initial matter, the Court notes that the Motion to Dismiss has not been converted into a motion for summary judgment because the Court has not considered matters outside the pleadings. "Rule 7(a) defines 'pleadings' to include both the complaint and the answer, and Rule 10(c) provides that '[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.'" Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)(quoting Fed. R. Civ. P. 7(a) and 10(c)).

Furthermore, the incorporation by reference doctrine allows a court to consider a document attached to the pleadings or to a motion to dismiss without converting a Rule 12(b)(6) motion into a motion for summary judgment if the document is central to the claim and its authenticity is not challenged. Id. at 1134–35. Additionally, "a document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, [a court] may consider such a document provided it meets the centrality requirement imposed in Horsley." Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005).

Here, the Court has considered the Complaint (Doc. # 1) and its attachments including, the right to sue letter (Id. at Ex. A) and the December 9, 2014, charge of discrimination (Id. at Ex. B).

Additionally, the Court has considered the February 7, 2014, charge of discrimination, which was incorporated by reference in the December 9, 2014, charge and was discussed within the Complaint. (Doc. # 16 at Ex. A). As the February 7, 2016, charge was the first filed of the two EEOC charges by Watson regarding his allegations of race discrimination and retaliation, the Court finds that the charge is central

8

to the case. Furthermore, the County has not disputed the authenticity of the February 7, 2016, charge.

**B. Title VII Claims**

Pursuant to Title VII of the Civil Rights Act of 1964, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

Before filing a suit under Title VII, a plaintiff must exhaust his available administrative remedies by filing a charge with the EEOC. Anderson v. Embarq/ Sprint, 379 F. App'x 924, 926 (11th Cir. 2010)(citing 42 U.S.C. § 2000e–5(e)(1)). "The starting point of ascertaining the permissible scope of a judicial complaint alleging employment discrimination is the administrative charge and investigation." Id. A plaintiff's complaint is "limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Alexander v. Fulton Cty., Ga., 207 F.3d 1303, 1332 (11th Cir. 2000); see also Sanchez v. Standard Brands, Inc., 431 F.2d 455, 460 (5th Cir. 1970)(noting that the allegations in a complaint filed

pursuant to Title VII may encompass any kind of discrimination like or related to the allegations contained in the charge).

Therefore, claims — even new claims — "are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint . . . ." Anderson, 379 F. App'x at 926 (internal quotations omitted). Conversely, "allegations of new acts of discrimination are inappropriate." Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279–80 (11th Cir. 2004). Nonetheless, courts are "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]." Sanchez, 431 F.2d at 460–61. As such, "the scope of an EEOC complaint should not be strictly interpreted." Id. at 465.

Therefore, the proper inquiry here is whether the Complaint was like or related to, or grew out of, the allegations contained in Watson's EEOC charges. Gregory, 355 F.3d at 1280. In its Motion to Dismiss, the County argues that Watson failed to allege in his charge of discrimination the same factual allegations upon which this Complaint is based. (Doc. # 10 at 1). Therefore, according to the County, Watson failed to exhaust his administrative remedies. (Id.). Specifically, the County asserts that "the factual basis for [Watson's] FCHR claims differs significantly from the factual

10

claims presented in the Complaint at bar." (Id. at 1-2). The County contends that the more limited allegations of the EEOC and FCHR charges did not allow the EEOC to investigate all the allegations of discrimination and retaliation against the County before Watson filed suit. (Id. at 3). The Court disagrees.

This is not a case in which a plaintiff only alleged or checked a box for one type of discrimination in his EEOC charge and then alleged another type in his complaint. See, e.g., Chanda v. Engelhard/ICC, 234 F.3d 1219, 1225 (11th Cir. 2000)(barring Title VII national origin discrimination claim where "[n]othing in his EEOC filing mentions discrimination based on national origin, any complaint about such discrimination, or a claim under Title VII"); Cooper v. Cmty. Haven for Adults & Children with Disabilities, No. 8:12-cv-1041-T-33EAJ, 2013 WL 24240, at *5 (M.D. Fla. Jan. 2, 2013)(dismissing Title VII claims where plaintiff "checked only the box labeled 'disability' on her EEOC charge of discrimination" and did not allege that "she was discriminated against based on race, color, religion, sex, or national origin"); Francois v. Miami-Dade Cty., 742 F. Supp. 2d 1350, 1353 (S.D. Fla. 2010), aff'd sub nom. Francois v. Miami Dade Cty., Port of Miami, 432 F. App'x 819 (11th Cir.

11

2011)("Nothing in Plaintiff's EEOC charge or his amended charge indicated that Plaintiff's claims were based on national origin. His EEOC charges alleged only sexual discrimination and harassment and retaliation based on those claims.").

On the contrary, Watson checked the boxes for "race," "national origin," "color," and "retaliation" on both charges. See (Doc. ## 1 at Ex. B, and 16 at Ex. A). Furthermore, Watson alleged in the text of the charges that he was discriminated against based on his race and subsequently retaliated against for opposing that discrimination. Watson's February 7, 2016, charge states:

> I am currently employed with Hillsborough County as an Engineer Specialist II. *I have been subjected to harassment and discrimination based on my race (African American), national origin (African American), and color (Black)*. I complained to Hillsborough County about the harassment and discrimination, but Hillsborough County did not take my complaints seriously and failed to take prompt remedial action. For example, I was subjected to unwarranted investigations and proposed discipline without any legitimate basis. *I believe these adverse actions, among others, are because of my race, color, and/or national origin and in retaliation for engaging in protected activity*.

(Doc. # 16 at Ex. A)(emphasis added). In this charge, Watson identifies the basis for his Complaint: he suffered harassment and discrimination because he is African American,

12

and the County retaliated against him with unwarranted investigations and discipline for reporting that discrimination. Similar allegations appear in Watson's December 9, 2014, charge, which further alleges that Watson was disciplined with a written reprimand on October 24, 2014, in retaliation for filing his first charge with the EEOC. (Doc. # 1 at Ex. B). Watson's December 9, 2016, charge states:

> On or about February 7, 2014, I filed a charge of discrimination against Hillsborough County, Florida, alleging race, color and national origin discrimination and retaliation (EEOC Charge No. 511-2014-01040). Subsequently, on October 24, 2014, Hillsborough County issued me a Written Reprimand for instances that allegedly occurred in 2013. I believe Hillsborough County took this adverse action because of my race, color, and/or national origin and in retaliation for engaging in protected activity.

(Id.).

Nevertheless, the County cites Hillemann v. University of Central Florida, 411 F. Supp. 2d 1354, 1363-64 (M.D. Fla. 2004), in support of its position that Watson's charges and Complaint do not share a sufficiently similar factual basis to have given the EEOC an opportunity to investigate the Complaint's allegations. But, Hillemann does not support that conclusion. In Hillemann, the district court granted summary judgment because the plaintiff had not exhausted her administrative remedies for claims of gender and race

discrimination and retaliation. Id. at 1364. However, the court did so because plaintiff's EEOC charge only included allegations of age discrimination, with only the box for "age" checked. Id. As the court stated:

> [N]othing suggests that Hillemann's complaints about age discrimination ever led to an EEOC investigation into gender or race discrimination, or into retaliation against Hillemann for having complained about gender or race discrimination (as would be required for a Title VII retaliation claim). Such investigations would not reasonably be expected to grow out of the [charge].

Id.

Watson's charges of race discrimination and retaliation are distinguishable from Hillemann's charge because Watson's subsequent Complaint does not expand the types of discrimination alleged. Cf. Cobb v. Marshall, 481 F. Supp. 2d 1248, 1255 (M.D. Ala. 2007)(allowing race discrimination claim, but dismissing sexual harassment claim, where the EEOC charge's allegations did not mention sexual harassment and only the "race," "age," and "retaliation" boxes were checked). Rather, Watson's Complaint elaborates and clarifies the charges' allegations of race discrimination and retaliation. See Wu v. Thomas, 863 F.2d 1543, 1547 (11th Cir. 1989)(finding that the complaint's retaliation claim was reasonably related to the EEOC charge because the complaint

"amplif[ied] the [charge's] claim of retaliation with additional instances of wrongful retaliatory conduct"). While the charges' allegations are not as specific as those in the Complaint, the Eleventh Circuit has explained that "the specific words of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow." Sanchez, 431 F.2d at 465. The EEOC would reasonably be expected to investigate the County's allegedly discriminatory treatment of African-American employees on the basis of Watson's charges.

Given the liberality with which the scope of an EEOC charge is interpreted, and the allegations of race discrimination and retaliation asserted in the charges of discrimination, the Court finds that the Complaint's allegations are related to those of Watson's charges. Therefore, Watson exhausted his administrative remedies as to his race discrimination and retaliation claims before initiating this action.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Hillsborough County's Motion to Dismiss (Doc. # 10) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 7th day of October, 2016.

<u>/s/ Virginia M. Hernandez Covington</u>
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE